SILVERMAN, Circuit Judge,
with whom KLEINFELD and CALLAHAN, Circuit Judges, join, dissenting:
By analyzing separately every single second of the approximately five-minute encounter between Smith and the Hemet police, the majority misses the forest for the trees. Here’s the forest: From the moment the police arrived and told Smith to remove his hands from his pockets, until the police finally handcuffed him, the police were trying to subdue and detain Smith, and he resisted. The undisputed facts show that this was one continuous, uninterrupted sequence of events. The majority gets off the track by focusing on how many different ways Smith might have violated the law after the police arrived at the scene. It does not matter. What matters is that Smith’s actions, however numerous, culminated in one arrest. He was then convicted, by guilty plea, of resisting an officer. In California, a conviction for resisting arrest establishes that the force used to effect the arrest was not excessive. People v. White, 101 Cal.App.3d 161, 164, 161 Cal.Rptr. 541 (1980). That is why Smith’s § 1983 excessive force lawsuit is barred by Heck. If his lawsuit were successful, the civil judgment in his favor would be inconsistent with his criminal conviction.
The contrast between this case and Sanford v. Motts, 258 F.3d 1117 (9th Cir.2001), illustrates the point. In Sanford, the plaintiff had already been arrested and handcuffed when she was allegedly punched in the face by Officer Motts. Id. at 1118. We held: "Excessive force used *708 after an arrest is made does not destroy the lawfulness of the arrest" for a violation of California Penal Code § 148. Id. at 1120 (emphasis added). Because a successful § 1983 claim for events that took place subsequent to her arrest could in no way imply the invalidity of her § 148 conviction, Sanford's conviction for violating § 148 did not trigger the Heck v. Humphrey bar to her § 1983 lawsuit.
This is in sharp contrast to the present ease where the allegedly excessive force was employed while Smith was being arrested. It does not matter how many times Smith refused to take his hands out of his pockets or to step off the porch. It does not matter how many times he refused to turn around or how many times he may have flailed his arms as the police tried to handcuff him. The undisputed facts show that “there was no break,” to use the words of the Cunningham court, between Smith’s disobedience and the police response that culminated in his arrest. See Cunningham v. Gates, 312 F.3d 1148, 1155 (9th Cir.2002). Smith’s “provocative act” and “the police response he claims was excessive ... are so closely interrelated, [Smith’s] conviction forecloses his excessive force claim.” Id.
This is an issue of California law, and in a case with facts very close to Smith's, the California Court of Appeal concluded that Heck barred a § 1983 suit where the plaintiff had been convicted of a § 148 violation involving multiple acts of resistance. Susag v. City of Lake Forest, 94 Cal.App.4th 1401, 1405-06, 115 Cal.Rptr.2d 269 (2002). In Susag, a deputy sheriff noticed a car with an expired registration and called for a tow truck. Id. at 1406, 115 Cal.Rptr.2d 269. Although Susag initially denied owning the car, after it was hitched to the tow truck he got into the driver's seat. He was ordered out of the car "several times" but refused to get out — one act of resistance. He started the car and accelerated the engine — another act of resistance. The deputy then pepper-sprayed Susag and again ordered him to get out of the car, which Susag refused — another act of resistance. Susag then pushed one of the deputies — yet another act of resistance — and struggled with the deputies when they tried to handcuff him — a final act of resistance. A jury found him guilty of one count of violating § 148. Susag and his family subsequently brought a § 1983 suit alleging excessive force and other claims against the officers involved. Id. at 1407, 115 Cal.Rptr.2d 269. The trial court granted summary judgment to the officers on the grounds that Susag's suit was barred by Heck. Id.
The California Court of Appeal affirmed. In doing so, the court rejected Susag’s argument that the Heck bar did not apply when it was unclear which act of acts of resistance formed the basis of the Susag’s § 148 conviction.
[Susag] contends the record in his criminal case, which is not before us, does not reflect which acts formed the basis for his conviction, and as a result he can pursue his section 1983 action for the officer’s use of pepper spray before he was ultimately subdued and placed in the patrol car. We disagree and conclude that any claim of excessive force based on discrete acts that occurred immediately preceding [Susag’s] arrest is barred by the Supreme Court’s holding in Heck v. Humphrey, [citation omitted], since a finding in his favor would necessarily imply the invalidity of his conviction under Penal Code section 148, subdivision (a).
Id. at 1409-10, 115 Cal.Rptr.2d 269. In addition, the Court of Appeal contrasted Susag’s situation to the one presented in Sanford, noting that, “[Susag] has alleged no claims of excessive force that took place *709 after he was finally subdued and placed in the patrol car.” Id. at 1410, 115 Cal.Rptr.2d 269. (emphasis added.)
The majority argues that Smith’s conviction might have been based only on his conduct while on the porch, before any force was used; ergo, the conviction fails to establish the lawfulness of the force employed from that point on. This argument is foreclosed by Susag. In addition, under California’s continuous course of conduct rule, Smith’s conviction for resisting arrest necessarily includes all of the acts that comprise a continuous or indivisible transaction. People v. McFarland, 58 Cal.2d 748, 760, 26 Cal.Rptr. 473, 376 P.2d 449 (1962); People v. Simon, 21 Cal.App. 88, 90, 131 P. 102 (1913). The major considerations in determining whether similar acts are part of the same transaction are the amount of time elapsed between the discrete incidents, and whether there was any break in the criminal activity. See People v. Jefferson, 123 Cal.App.2d 219, 221, 266 P.2d 564 (1954) (holding that two distinct acts of assault with a deadly weapon taking place within a fifteen minute period "were a part of the same incident, and they could not reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge"); People v. Mota, 115 Cal.App.3d 227, 233, 171 Cal.Rptr. 212 (1981). Had discrete acts of resistance taken place over the course of an hour rather than five minutes, they might not have constituted the same offense. See People v. Moreno, 108 Cal.Rptr. 338, 32 Cal.App.3d Supp. 1, 8-9 (1973) (holding two instances of violating § 148 were two offenses because thirty minutes elapsed between the two incidents and "[i]n the intervening space of time the defendant had completely calmed down, and ceased his criminal activity"). Here, however, it is undisputed that Smith’s encounter with the Hemet police took place during one continuous, uninterrupted five-minute period.[1]
The continuous course of conduct rule is for the protection of criminal defendants like Smith. The rule bars the state from prosecuting a defendant again for acts that were part and parcel of the same continuous transaction. It is this rule that now prevents the State of California from charging Smith anew for the conduct occurring after he first refused to take his hands out of his pockets. And again for refusing to put his hands on his head. And again for not turning around. And again for not coming off the porch. And again for refusing to submit to handcuffing. Smith was charged and convicted of one count of resisting an officer that necessarily encompassed the entire sequence of events leading up to his arrest. If, for whatever reason, Smith wanted to waive the protection of that rule and plead guilty to one identified act, leaving himself open to possible prosecution for acts that otherwise would be dead letters, it was incumbent upon him to say so. See Susag, supra, at 1410,115 Cal.Rptr.2d 269 (“Once the defendants met their burden of proving [Susag] had an undisturbed conviction under Penal Code section 148, subdivision (a), the burden shifted to him to provide evidence of excessive force that would not necessarily imply the invalidity of his conviction.”).
*710 The majority’s citation of cases from other circuits reveals its misunderstanding of how state criminal law affects the Heck analysis. The question in this case is what a California resisting arrest conviction establishes. The citation to Robinson v. Doe, 272 F.3d 921 (7th Cir.2001), and other federal cases arising from other states, where the criminal law is different, sheds no light on the matter. In Illinois, for example, excessive force does not render an arrest illegal. Id. at 923. (“Police might well use excessive force in effecting a perfectly lawful arrest.”). As we have seen, the law is otherwise in California.[2]
To summarize: If Smith had been gratuitously sprayed with mace or bitten by the dog after he had been arrested, his conviction for resisting an officer would not have barred his § 1983 lawsuit. However, everything Smith complains of took place in the course of arresting him. The district court correctly ruled that Smith’s excessive force lawsuit was barred by Heck v. Humphrey, and for that reason, I respectfully dissent.[3]

. The majority says that the encounter lasted "substantially longer than five minutes." I guess that depends on what "substantially longer” means. According to Smith's brief, Officer Reinbolt, the first officer to respond, started the tape recorder when he arrived at the scene. The transcript of the recording shows that the tape was turned off after Smith had been handcuffed and was having his eyes washed out with water from a garden hose. From start to finish, the recording lasted five minutes and thirteen seconds.

. It is also the rule in California that multiple acts of resistance culminating in an arrest for resisting an officer are subsumed in one California Penal Code § 148 conviction. Susag, 94 Cal.App.4th at 1409-10, 115 Cal.Rptr.2d 269. The majority may dislike that rule, but is not free to substitute its own view of California state law for that of the California Court of Appeal. See Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir.2002).

. Because the lawsuit is Heck-barred, it is unnecessary to reach, as the majority does, the question of whether the force used to arrest Smith was excessive or whether the use of the dog constituted deadly force. However, in the interest of the completeness of the story, it should be noted that prior to this incident, Quando's teeth had been capped and were incapable of inflicting deep puncture wounds. The bite wounds sustained by Smith were superficial and were cleaned at the scene by paramedics. Smith was taken to a hospital immediately after his arrest, before being booked into jail. He was evaluated at the hospital but required no further treatment of any sort.